IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

MACEO D. JOHNSON,

Petitioner,

vs.

BRUCE YELICH, Superintendent, Bare
Hill Correctional Facility,[1]

Respondent.

No. 9:11-cv-01207-JKS

MEMORANDUM DECISION

Maceo Johnson, a New York state prisoner proceeding *pro se*, filed a Petition for Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Johnson is currently in the custody

of the New York State Department of Corrections and Community Supervision and is

incarcerated at the Bare Hill Correctional Facility. Respondent has answered, and Johnson has

not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 1, 2009, a grand jury charged Johnson with Criminal Possession of a

Weapon in the Second Degree, three counts of Criminal Possession of a Weapon in the Third

Degree, Criminal Contempt in the Second Degree, and Falsely Reporting an Incident in the

Third Degree. On direct appeal, the Appellate Division of the New York Supreme Court

summarized the facts and allegations underlying Johnson's indictment:

> After a brief standoff with law enforcement officers, [Johnson] was taken into
> custody on September 17, 2009 for charges stemming from a domestic dispute with his
> girlfriend. A temporary order of protection was issued directing him to stay away from
> and not communicate with his girlfriend [Shawn Euber], as well as to surrender all his

[1]      Bruce Yelich, Superintendent, Bare Hill Correctional Facility, is substituted for
William T. Haggett, Superintendent, Mt. McGregor Correctional Facility. FED. R. CIV. P. 25(c).

guns by 3:00 pm the next day. Shortly after being released, [Johnson] violated the order of protection by sending a text message to his girlfriend, which resulted in his arrest on September 18, 2009. A consented search of his home following his arrest failed to produce any guns and, although he initially claimed that his guns must have been stolen, he eventually acknowledged that he had moved them to the apartment of a friend, Willie Taylor.

Taylor consented to a search of his apartment where police found, among other things, an AR-15 semiautomatic rifle together with loaded clips of ammunition for the rifle. The rifle allegedly had a detachable magazine as well as various modifications, including a pistol grip, 7.5-inch barrel, collapsible stock, flash suppressor and bayonet mount (*see* Penal Law § 265.00[3],[22]). [Johnson] admitted that the weapons found in Taylor's apartment belonged to him.

The same day that Johnson was charged, the prosecution filed notice pursuant to New York Criminal Procedure Law ("CPL") § 710.30 that it intended to offer at trial statements Johnson made during his arrest.

On December 16, 2009, the Washington County Court held a *Huntley* hearing[2] to determine the admissibility of the statements. Following the hearing, the court denied Johnson's motion to suppress the statements, concluding that the prosecution established beyond a reasonable doubt that Johnson was advised of his *Miranda* rights and that his statements were given voluntarily.

On February 25, 2010, Johnson proceeded to jury trial. At trial, Shawn Euber, Willie Taylor, and five members of the state police testified on behalf of the prosecution. Johnson presented no witnesses on his behalf.

At the conclusion of trial, the jury convicted Johnson of Criminal Possession of a Weapon in the Second Degree; two counts of Criminal Possession of a Weapon in the Third

---

[2]     *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965). The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

Degree; and Criminal Contempt in the Second Degree. On April 1, 2010, the court sentenced Johnson to a determinate term of six years of imprisonment plus five years of supervised release for the second-degree criminal possession of a weapon conviction; another determinate term of six years and three years of supervised release for the third-degree criminal possession of a weapon conviction; an indeterminate term of two to six years for the other third-degree criminal possession of a weapon conviction; and a one-year definite jail sentence for the criminal contempt conviction. All of the sentences were to run concurrently.

On April 1, 2010, Johnson, proceeding *pro se*, moved to set aside the judgment and sentence pursuant to CPL §§ 440.10 and 440.20. Johnson claimed that: 1) the prosecution and court knowingly introduced false material evidence; 2) the evidence used against him was procured in violation of his constitutional rights; and 3) the judgment was obtained in contravention of his constitutional rights. The county court denied his motion on the ground that it was procedurally barred under CPL § 440.10(2)(b), which requires a court to deny a motion to vacate a judgment when sufficient facts appear on the record to permit the claims to have been raised on direct appeal. The court also denied the motion to vacate the sentence, finding that the sentence imposed was proper. Johnson did not appeal the denial.

On April 5, 2010, Johnson, represented by counsel, appealed his conviction. He argued that there was insufficient evidence to support his second-degree criminal possession of a weapon convictions and that the prosecution's failure to fulfill their discovery obligations by disclosing their records showing the assault rifle's operability warranted reversal of the criminal possession of a weapon count. The Appellate Division of the Supreme Court denied the appeal, rejecting Johnson's contentions that the jury's verdict was not supported by legally sufficient

evidence or against the weight of the evidence and concluding that any delay in the prosecution's disclosure of information of the operability of the rifle did not prejudice Johnson because the county court offered him an opportunity for similar testing. *People v. Johnson*, 920 N.Y.S.2d 809 (N.Y. App. Div. 2011). Johnson subsequently sought leave to appeal the denial to the Court of Appeals. The Court of Appeals summarily denied leave on August 5, 2011. *People v. Johnson*, 917 N.Y.3d 818 (N.Y. 2011).

On June 9, 2011, Johnson, proceeding *pro se*, moved again to vacate the judgment and set aside his sentence pursuant to CPL §§ 440.10 and 440.20. Johnson claimed that he had newly discovered evidence that, had it been discovered at trial, could have favorably impacted the jury's verdict. That evidence consisted of a certificate of disposition stating that the Saratoga County Court had dismissed and sealed the charges against him stemming from his September 17, 2009, confrontation with Euber. He also contended that the police violated his constitutional rights by trespassing on his property and arresting him without a warrant. Johnson further claimed that the sentence against him was invalid because the charges that "started the chain of events" leading to his conviction had been dismissed. The Washington County Court denied the motion, explaining that the Saratoga County protection order was valid at the time of Johnson's arrest and that the later dismissal of charges had no bearing on his contempt and weapons convictions. Johnson sought leave to appeal the denial in the Appellate Division, which the appellate court summarily denied.

On August 23, 2011, Johnson filed a third *pro se* motion to vacate the judgment and set aside the sentence. Johnson argued in this motion that the prosecution failed to turn over

*Rosario*[3] material in the form of an exculpatory statement of a gun dealer who sold the illegal weapon to Euber rather than Johnson. The county court denied the motion based on a lack of factual allegations and noted that Johnson could have raised this claim in his earlier CPL § 440 motions. Johnson sought leave to appeal the denial in the Appellate Division, which was summarily denied on November 22, 2011.

Johnson timely filed a petition for a writ of habeas corpus to this Court on October 4, 2011.

## II. GROUNDS RAISED

In his *pro se* Petition, Johnson raises 28 grounds, including allegations that: 1) his conviction was obtained by "fruit of the poisonous tree" because it relied on charges that were eventually dismissed; 2) the police trespassed on his property without obtaining an arrest or search warrant; 3) his statement to police was taken in violation of his Fifth Amendment right against self-incrimination; 4) the prosecution violated *Rosario* by failing to turn over the statement of Euber's sister; 5) the prosecution violated *Rosario* by failing to turn over the statement of Euber's sister;[4] 6) the prosecution violated *Rosario* by failing to turn over the statement of a gun dealer; 7) trial counsel provided ineffective assistance; 8) appellate counsel provided ineffective assistance; 9) the conviction was obtained by an illegal order of protection; 10) the trial court misused its authority; 11) he was denied the right to attend and present evidence to the grand jury; 12) the prosecution failed to respond to Johnson's bill of particular

---

[3] *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961). The term "*Rosario*" is a shorthand reference to the rules of mandatory discovery in criminal cases under New York law.

[4] Ground 5 of Johnson's Petition, which states that "[t]he People failed to disclose records and the statements of Heather Lutz" contains the same allegations in ground 4 and therefore will not be addressed separately.

and discovery demand; 13) the trial court failed to impose sanctions for the prosecution's failure to respond; 14) the complaint against Johnson relating to the domestic dispute was false; 15) the prosecution failed to present any witness as to Johnson's intent; 16) the prosecution failed to prove that the weapon was operable; 17) Euber, and not Johnson, purchased "the weapon";[5] 18) the verdict was inconsistent because he was acquitted of one of the weapon charges; 19) the Appellate Division's decision on direct appeal was erroneous; 20) his conviction was obtained in violation of his state constitutional rights; 21) his conviction was obtained in violation of his federal constitutional rights; 22) the jail law library was inadequate to prepare for trial; 23) trial counsel provided ineffective assistance;[6] 24) his conviction was obtained by *Brady*[7] and *Rosario* violations; 25) his conviction was obtained by *Brady* and *Rosario* violations; 26) the prosecution presented perjured testimony; 27) his conviction was obtained by violations of state and federal law;[8] and 28) his conviction was affirmed based on a false domestic report and a police stand-off that never occurred.[9]

### III. STANDARD OF REVIEW

---

[5]     Ground 17 of Johnson's Petition, that the "conviction obtained by suppreession [sic] by the People of the fact that one of the People's witnesses did in fact purchase, own, and possessed the weapon," is based on the same underlying facts as ground six and therefore will not be addressed separately either.

[6]     Ground 23, which alleges that Johnson had to "totally rely and depend upon the perfunctory performance of an [sic] Counsel who was unprepared for trial and ineffective," contains the same allegations as in ground 7 and therefore will not be addressed separately.

[7]     *Brady v. Maryland*, 373 U.S. 83 (1962).  The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

[8]     Ground 27 merely rehashes arguments made in his other grounds for relief and therefore will not be addressed separately.

[9]     Ground 28 merely rehashes arguments made in his other grounds for relief and therefore will not be addressed separately.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are

presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Johnson has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

A. Exhaustion

Respondent correctly contends that most of Johnson's claims are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

Johnson did not raise the vast majority of his claims to the state courts in either his direct appeal of his conviction or in any of the three §§ 440.10 and 440.20 motions, including claims 3, 6-8, 10-13, 18-22, and 24-26. Accordingly, Johnson has failed to exhaust these claims.

Respondent also correctly asserts that, because Barnes presented claims 4 and 16 to the state courts solely on the basis of state law, he has not properly exhausted his state-court remedies as to those claims. Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). Claims 5 and 16 are therefore also unexhausted.

With the exception of the ineffective assistance of counsel claims (claims 7-8), his unexhausted claims are procedurally barred. Because Johnson's claims are based on the record, they could have been raised in his direct appeal but were not; consequently, Johnson cannot bring a motion to vacate as to these claims. CPL § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Moreover, Johnson cannot now raise these claims on direct appeal because he has already filed the direct appeal and leave application to which he is entitled. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991).

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey*, 933 F.2d at 121. A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986), superceded by statute on other grounds, *United States v. Gonzalez-Largo*, No. 07-cv-0014, 2012 WL 3245522, at *2 (D. Nev. Aug. 7, 2012). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). Johnson does not claim that cause exists for his procedural default, nor does he assert actual innocence. Because Johnson may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

Johnson's unexhausted claims that trial and appellate counsel were ineffective are not barred, however, because there is no time limit or number bar in filing writ of error coram nobis applications. *See Smith v. Duncan*, 411 F.3d 340, 347 n.6 (2d Cir. 2005); *Turner v. Sabourin*, 217 F.R.D. 136, 147 (E.D.N.Y. 2003). Johnson may therefore still exhaust these claims in state court. This Court could stay the petition and allow Johnson to return to state court to satisfy the exhaustion requirement as to the remaining claim. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). However, Johnson has not requested that this Court stay and hold his petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed

petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). In his Petition, Johnson provides no reason why he did not seek relief on these claims through a coram nobis application to the state court.

Despite Johnson's failure to exhaust the vast majority of his claims, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines*, 544 U.S. at 277. Accordingly, this Court declines to dismiss these claims[10] solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B. Merits

1.    *Claims Challenging Procurement of Evidence* (claims 1, 2, 3, 9, 14, 19)

Johnson brings a number of claims challenging his conviction based on the methods in which law enforcement obtained the evidence against him.

A.    *Claims 1, 9, 14, 19. Dismissal of domestic violence complaint*

Johnson first asserts a number of claims grounded on the same premise: that his conviction should be reversed because the complaint and protection order resulting from the September 17, 2009, incident, which "started the chain of events" leading to his arrest the

_____

[10]    The unexhausted and procedurally barred claims include claims 3-4, 6, 10-13, 16, 18-22, and 24-26. The claims that are unexhausted but not procedurally barred include claims 7 and 8. As discussed *supra*, claims 5, 17, 23, 27, and 28 include allegations underlying other claims and will not be separately discussed. The claims that were exhausted and are properly before this Court include claims 1, 2, 9, 14, 15.

following day, were eventually dismissed.  In claim 1, Johnson alleges that his conviction was obtained by "Fruit From the Poisonous Tree."  In claim 9, Johnson asserts that the conviction was obtained by an "illegal order of protection" resulting from the incident.  In claim 14, Johnson contends that the complaint filed in connection with the incident was "false . . . and never proven to be true," and he argues in claim 19 that the Appellate Division's affirmance of his conviction was erroneous because the allegations in the complaint "turned out to be untrue and dismissed in the interest of justice."

Johnson raised the same type of claim before the county court in his second CPL § 440 motion to vacate the judgment and set aside the sentence.  The court denied the motion, stating:

> On September 17, 2009, the Greenfield Town Court, Saratoga County, New York issued an order of protection.  At that time, there was a criminal charge pending in that court against [Johnson].  On September 18, 2009, [Johnson] committed various criminal acts that led to multiple criminal convictions in this court.  One of those charges was criminal contempt in the second degree for violating the Greenfield Town Court order of protection.  On May 3, 2011, the charge which led to issuance of the order of protection was dismissed.  Based on this, [Johnson] argues that the judgment against him should be vacated.  There was a valid order of protection in place when [Johnson] committed acts which violated it. As such, he could be charged with, and convicted of, criminal contempt in the second degree.

Even if the domestic violence case was eventually dismissed, the protection order requiring him to surrender his guns was valid and in effect at the time Johnson violated it by texting Euber.  That the protection order and complaint were later dismissed does not alter the fact that the jury determined beyond a reasonable doubt that Johnson committed the offenses of which he was convicted.  The state court therefore properly denied the motion to vacate the judgment.  That decision was not contrary to nor did it involve an unreasonable application of clearly established federal law, and it did not constitute an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).  Johnson is therefore not entitled to relief on any of these claims.

B.      *Claim 2.  Unlawful arrest*

Johnson next argues that the police trespassed on his property, searched his home without a search warrant, and arrested him without a warrant.  As Respondent notes, however, these arguments are precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976).  Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial.  *Id.* at 482.  The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim.  *See McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).  In order to receive habeas review of his Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process."  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).  A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims.  *Id.* at 72.  That New York has in place such procedures is well-settled, *see id.*, and Johnson has not asserted the existence of an unconscionable breakdown of that process in this case.  Johnson is therefore not entitled to relief on this ground either.

C.    *Claim 3.  Violation of right against self-incrimination*

Johnson further argues that his conviction was obtained in violation of his right against self-incrimination.  Johnson raised this issue for the first time in his *pro se* motion to the Court of Appeals seeking review of the denial of his direct appeal.  Although the Court of Appeals summarily denied the claim, the admissibility of his statements was the subject of a *Huntley* hearing conducted by the trial court, after which the trial court issued the following factual findings and legal conclusions:

**Findings of Fact**

On September 18, 2009, Investigator Borbolla called [Johnson] to discuss an alleged violation of an order of protection.  [Johnson] made admission regarding the alleged violation.  Based on that admission, and the fact that [Johnson] had to surrender some firearms, Investigator Borbolla told [Johnson] that he was going to come to [Johnson's] residence.  At first, [Johnson] reported that the guns had been stolen.  For safety reasons, Officer Borbolla told [Johnson] to meet him at the roadside by his house.

[Johnson] was picked up and taken into custody at the intersection of a roadway close to his home in Argyle, Washington County, New York.  [Johnson] was put in handcuffs, placed in a marked patrol car operated by Trooper Peck and brought to the driveway of his residence.  Once there, Investigator Borbolla informed [Johnson] of his *Miranda* rights by reading them from a printed card.  [Johnson] continued to insist that the weapons had been taken.

[Johnson] consented to a search of his residence: No weapons were found.  While on route to the Greenwich State Police Barracks (Greenwich Barracks), [Johnson] told Trooper Peck that the firearms were locked in a car on his property. Trooper Peck went back to the residence, the car was searched and no weapons were found.  Once again, Trooper Peck left the residence.  [Johnson] now stated that he would lead Trooper Peck to the location of the weapons.  [Johnson] directed Trooper Peck to an apartment in Hudson Falls.  The resident was located at his place of employment and consented to a search of his residence.  The firearms were located there.

Trooper Peck arrived at the Greenwich Barracks with [Johnson] at approximately 3:20 pm. Trooper Peck handcuffed [Johnson] to a wall and had him sit on a bench in the squad room. Trooper Peck asked if [Johnson] was willing to give a statement.  [Johnson] said that he would give a statement. Trooper Peck informed [Johnson] of his *Miranda* rights and proceeded to take a statement from [Johnson].  The entire interview lasted approximately ten (10) to fifteen (15) minutes. It was reduced to writing.

After Trooper Peck's interview, Investigators Borbolla and Hogan interviewed [Johnson].  The interview started at approximately 7:30 pm and lasted approximately

thirty (30) minutes.  It was conducted in an interview room.  Investigator Hogan did not inform [Johnson] of his *Miranda* rights again.  He simply told [Johnson] that he understood [Johnson] had been made aware of those rights and told him that they still remained in effect.  [Johnson] never asked for an attorney and never ceased answering questions.  Basically, Investigator Hogan discussed how [Johnson] came into possession of the semi-automatic rifle that is the subject of a criminal charge against [Johnson].

## Conclusions of Law

The People established beyond a reasonable doubt that the statements of [Johnson] were given voluntarily.

[Johnson] was in custody.  A reasonable person in [Johnson's] position would not feel he was able to leave.

Prior to making any statements to Trooper Peck regarding the location of weapons, Investigator Borbolla informed [Johnson] of his *Miranda* rights.  [Johnson] understood and did not invoke any of those rights.

Trooper Peck again informed the defendant of his Miranda Rights upon arrival at the Greenwich Barracks.  [Johnson] indicated that he understood and did not invoke any of those rights.  This is evidenced by the defendant's signature after those enumerated rights . . . .

The statement provided to Investigators Hogan and Borbolla is deemed admissible.  Neither Investigator re-administered *Miranda* warnings when [Johnson] was brought into the interview room.  Investigator Hogan did however confirm that [Johnson] had been made aware of his *Miranda* rights and informed [Johnson] that they were still in effect.  [Johnson] had been informed of his *Miranda* rights two (2) times prior to this final interview.  The last time being approximately four ( 4) hours earlier.  Further, [Johnson] remained in the Greenwich Barracks from the time he made a statement to Trooper Peck to the time the final interview was conducted.

Johnson alleges that he was "denied representation of counsel, use of the bathroom, food, water, or a phone call for twelve hours" during his arrest.  During the *Huntley* hearing, the police witnesses testified that they could not recall whether Johnson had been offered food and drink.  Johnson offers no evidence that would substantiate his bare assertions.

An individual's privilege against self-incrimination while in custody, embodied in *Miranda v. Arizona*, 384 U.S. 436 (1966), is not whether he is allowed to talk with the police without the benefit of warnings and counsel, but whether he can be interrogated.  *See Rhode Island v. Innis*, 446 U.S. 291, 299-302 (1980).  "Volunteered statements of any kind are not

barred by the Fifth Amendment and their admissibility is not affected by [the holding in *Miranda*]." *Miranda*, 384 U.S. at 478. In this case, the Washington County Court found as a factual matter that the challenged statements were either made after a proper *Miranda* warning was given or spontaneously made.

Johnson's arguments are nothing more than an attack on the testimony of the police officers. Johnson misperceives the role of a federal court in a federal habeas proceeding attacking a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. This Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the finding of fact. *See Schlup*, 513 U.S. at 330. In the absence of clear and convincing evidence to the contrary, this Court is bound by the factual findings of the state court. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340. Johnson therefore cannot prevail on his self-incrimination claim.

2.       *Legal Sufficiency Claims* (claims 15, 16, 18, 26)

Johnson also raises a number of claims asserting that there was insufficient evidence to support his conviction.

A.       *Jackson Standard on Habeas Review*

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In

making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must make its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)). It is through this lens that this Court must view an insufficiency of the evidence claim.

B.     *Claim 15.  Alleged failure to prove requisite intent*

Johnson argues in his Petition, as he did on direct appeal, that there was insufficient evidence to sustain his conviction for second-degree criminal possession of a weapon because the evidence did not show that he intended to use the illegal weapon against another.  The appellate court denied the claim, noting that, under New York law, "[t]here is a statutory presumption that permits, but does not require, that the element of intent to use the firearm unlawfully against another may be inferred from such possession."  The court pointed to additional evidence as well:

> In addition to the statutory presumption, there was also evidence of [Johnson] making threats of serious harm to his girlfriend.  Further, a police officer heard him state that he could have "taken any of us out" during the standoff, and he was seen that night by an officer as he crouched and moved about apparently armed with an assault rifle.  [Johnson] misled law enforcement officers about his weapons and he attempted to keep the weapons, despite the terms of the order of protection, by temporarily placing them with a friend.

Johnson again misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.  *See Schlup*, 513 U.S. at 330.  In this case, the Appellate Division determined that there was sufficient evidence of each element of the crime of criminal possession of a weapon in the second degree as defined in New York law, including the element of specific intent, to support Johnson's conviction.  Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  Johnson bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous.  28 U.S.C. § 2254(e)(1).  Johnson has failed to carry such

burden. The record does not compel the conclusion that no rational trier of fact could have found proof that Johnson was guilty of second-degree criminal possession of a weapon, especially considering the double deference owed under *Jackson* and AEDPA. Accordingly, Johnson is not entitled to relief on this legal insufficiency claim.

C.      *Claim 16. Weapon not proven operable*

In claim 16, Johnson raises for the first time his argument that the prosecution failed to prove that the gun was operable because it was not sent to a ballistics lab for testing. The record establishes, however, that the prosecution had a trained officer shoot the weapon and testify as to its operability at trial. Under New York law, a police officer's test shooting of a weapon and testifying about the test is sufficient to establish operability in support of a conviction for criminal possession of a weapon in the second degree. *See People v. Cavines*, 518 N.E.2d 1170 (N.Y. 1987). Claim 16 is therefore without merit.

D.      *Claim 26. Conviction based on perjured statements*

Similarly, Johnson argues for the first time in claim 26 that his conviction was obtained by the perjured testimony of Euber. But this Court must defer to the jury's credibility findings concerning Euber's testimony. *See Bellezza v. Fischer*, Nos. 01-CV-1445, 03-MISC-0066, 2003 WL 21854749, at *15 (E.D.N.Y. Aug. 6, 2003) (holding that, on collateral review, a federal habeas court "must presume that the jury resolved any questions of credibility in favor of the prosecution") (internal quotation marks and citation omitted). Johnson's bare assertion that Euber falsely testified is insufficient to meet Johnson's heavy burden of showing that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Consequently, Johnson is not entitled to relief on this ground.

19

E.    *Claim 18.  Inconsistent verdict*

Johnson also argues that his conviction was improper because he was acquitted of count four of the indictment but convicted on counts one, two, and three "when counts One and Four of the indictment accused [Johnson] with the same allegation" and "the weapon in count four and the weapon in count one were found by law-enforcement at the same exact time and in the same exact location." It is well-settled, however, that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside." *Harris v. Rivera*, 454 U.S. 339, 345 (1981); *see United States v. Powell*, 469 U.S. 57, 65-66 (1984) (inconsistent verdicts are not subject to judicial review); *Johnson v. Fitzpatrick*, No. 08-CV-1194, 2010 WL 421127, at *12 (N.D.N.Y. Feb. 1, 2010) (holding that a claimed inconsistency in a jury's verdict does not present a basis for which a court may grant federal habeas relief). Johnson's inconsistent verdict claim therefore fails to overcome the heavy burden he faces in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence and he therefore is not entitled to relief on this ground.

3.    *Rosario/Brady Claims* (claims 4, 6, 12, 13)

Johnson additionally argues that his conviction should be reversed because the prosecution did not provide him with evidence to which he was entitled.

A.    *Claims 4, 6.  Rosario claims as to statements by a gun dealer and Euber's sister*

In claims 4 and 6, Johnson contends that his conviction was obtained by the prosecution's violation of the *Rosario* rule. Under *Rosario*, codified in CPL § 240.45, the prosecution must turn over to the defendant all written or recorded testimony of any person the prosecutor intends to call as a witness. 173 N.E.2d at 881.

Respondent contends that *Rosario* claims are state law claims, not founded on either the federal constitution or federal laws, which are not cognizable in a federal habeas proceeding. This Court agrees. *See, e.g.*, *Young v. McGinnis*, 411 F. Supp. 2d 278, 329 (E.D.N.Y. 2006); *Randolph v. Warden, Clinton Corr. Facility*, No. 04 CIV. 6126, 2005 WL 2861606, at *5 (S.D.N.Y. Nov. 1, 2005) ("the failure to turn over *Rosario* material is not a basis for habeas relief as the *Rosario* rule is purely one of state law"). The Second Circuit has addressed the merits of compliance with *Rosario* solely in the context of a claim of ineffective assistance of counsel for failure to raise a state law claim. *See, e.g.*, *Flores v. Demskie*, 215 F.3d 293, 300-05 (2d Cir. 2000); *Mayo v. Henderson*, 13 F.3d 528, 533-36 (2d Cir. 1994). Johnson is therefore not entitled to habeas relief on his *Rosario* claims.

Moreover, even if this Court were to consider his claims as being brought under *Rosario*'s federal counterpart, *Brady v. Maryland*, 373 U.S. 83 (1962), Johnson's claims would nonetheless fail. To constitute a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Johnson claims that the prosecution violated their obligations by failing to turn over a receipt from Hawk's Corner Gun Shop that showed that Euber purchased a component of one of the guns. Johnson cannot demonstrate that he was prejudiced by the alleged suppression, however, because the record shows that defense counsel cross-examined Euber about the receipt and Euber admitted that she had purchased the component. Johnson therefore cannot establish that the prosecution's failure to disclose the receipt constitutes a *Brady* violation.

Johnson also claims that the prosecution failed to turn over the statement given to police by Euber's sister, Heather Lutz, following the September 17, 2009, incident. Johnson attaches as an exhibit Lutz's statement to police which he claims "disputes the allegations" of Euber.

Lutz's statement describes the following incident:

Shawn's boyfriend, [Johnson], who is Trinity's father, pulled up to the bus stop in his silver Jeep Liberty. He got out of the car, and tried to pull Trinity out of her stroller. Trinity was strapped into the stroller, and it got knocked over. [Johnson] was stepping on Trinity's arm and seemed oblivious that she was there. He was arguing with Shawn and stepping on Trinity. At this time, [a friend] ran to my house to call 911. I was able to get Trinity out of the stroller . . . [Johnson] started pushing me and pulling Trinity away from me. I could smell alcohol on [Johnson], and I kept telling him to leave. [Johnson] got Trinity away from me and put her in his car, and locked the doors. His niece and nephew . . . were in the car. [Johnson] and Shawn kept fighting, and I was able to get [the niece] to unlock the door and I grabbed Trinity. I then started running to my house with Trinity . . . . [Johnson] got back in the car, and started driving toward my house. Once [Johnson] saw that there were men at my house, he turned around and took off. I then went back inside and called the police to give them more information.

Euber's statement describes the incident as follows:

I am at the bus stop with my sister, [Lutz], and [a friend]. My ex-boyfriend [Johnson] showed up and says your [sic] staying and the baby is going. Then he tried to pull her out of the stroller . . . . The stroller got knocked over when he tried to pull her, because the baby [was] belted [in]. I then tried to get the keys out of the car. I believed he was intoxicated. He went to grab me and knocked the stroller over. He stepped on Trinity and my sister yelled. I got the keys and hid the keys. I jumped out and a struggle occurred. He was hold[ing] Trinity during this struggle. He threw Trinity in the front seat. There was no child seat. She is 2½. He looked for the keys and I jumped in the car and locked the door. His nephew unlocked the door . . . . I grabbed Trinity and tried to get out. He grabbed Trinity and pulled on her. He then let go and said . . . you can have her. He then left.

Euber further testified about the incident at trial:

[EUBER:]                    I was standing at the bus stop, approximately four o'clock with my sister and another area mother waiting for my niece and nephew to get off the bus because I leave my daughter there at 4:15 to go to work by five o'clock in Malta. And as we were standing on the side of the road, several hundred yards from my sister's house, [Johnson]

| | |
|---|---|
| | came driving in quickly and jumped out of the Jeep with the other two children in the cart [sic] . . . and proceeded to grab Trinity, who was strapped in an umbrella stroller, and lunged for me because I was getting the keys out of the Jeep, knocked Trinity over, stepped on her and ground her face into the dirt. And I yelled for the neighbor to call 911. |
| [DEFENSE COUNSEL:] | He ground her face? |
| [EUBER:] | She had a scuff mark on her face and on her elbow from the gravel. And she was still strapped in the stroller, upside down, with the stroller on top of her. |
| [DEFENSE COUNSEL:] | And you're saying that [Johnson] ground her face into the dirt? |
| [EUBER:] | He stepped directly on her abdomen. |

Johnson does not point to the inconsistencies between the statements that he contends render Euber's testimony inaccurate and thus exculpatory. Moreover, minor inconsistencies in statements are insufficient to establish that suppression of an inconsistent statement prejudiced a defendant such that a new trial is warranted. *See, e.g.*, *United States v. Jackson*, 345 F.3d 59, 74-75 (2d Cir. 2003) (noting that there was no reasonable possibility that minor inconsistencies between a witnesses's statement and an agent's report would have led to a different result if the information had been available at trial); *Frias v. United States*, Nos. 09 Civ. 2537, 01 Cr. 307, 2010 WL 3564866, at *7-8 (S.D.N.Y. Sept. 13, 2010) (holding that government was not required by *Brady* to disclose an unavailable witness's statement because, even though it conflicted with the testimony of a government witness, it also corroborated much of the witness's testimony and thus did not undermine the guilty verdict). Furthermore, Johnson cannot demonstrate that the non-disclosure of Lutz's statement prevented him from impeaching Euber. The record demonstrates that defense counsel used omissions in the family offense petition she filed as a

result of the incident to impeach her testimony when he asked, "Now, isn't it true that nowhere in this family offense petition that you filed . . . do you describe that [Johnson] knocked your daughter out of her stroller, stepped on her and shoved her face in the gravel?" Johnson therefore fails to establish a *Brady* violation as to the Lutz statement and is not entitled to relief on that ground either.

B.     *Claims 12 and 13.  Discovery disputes*

Johnson also claims that he is entitled to habeas relief because the prosecution failed to adequately respond to his bill of particular and discovery demand (claim 12) and the trial court failed to impose sanctions upon them (claim 13). Johnson raised this claim on direct appeal, arguing that his "convictions on counts one, two and three of the indictment should be reversed because the People failed to disclose evidence of the assault rifle's operability, resulting in undue prejudice to" him. The appellate court denied the claim, reasoning that, under state law, any delay in the prosecution's disclosure of their testing of the operability of the rifle was cured by the fact that Johnson was afforded access to the test results.

Johnson's argument on appeal focused solely on an alleged violation of New York pre-trial disclosure rules under CPL § 240.20. He did not argue before the state courts, nor does he argue before this Court, that the failure to disclose the information constitutes a constitutional violation. Johnson's failure to assert a claim of constitutional dimension forecloses it from federal habeas review. *See McWilliams v. New York*, 09-CV-0239T, 2011 WL 841336, at *7 (W.D.N.Y. Mar. 8, 2011) (discovery violations related to CPL § 240 are not cognizable on habeas review). Even construing Johnson's arguments liberally, Johnson fails to establish a *Brady* violation because, as the appellate court noted, he is unable to demonstrate prejudice

because he was offered access to the test results. "[T]he Constitution does not require the prosecutor to share all useful information with the defendant." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case.")). If the failure to disclose the rifle testing constituted error, it was solely a violation of state law, beyond the purview of this Court, and not a constitutional violation. Johnson therefore cannot prevail on his discovery claims.

4.      *Ineffective Assistance of Counsel* (claims 7, 8)

Johnson also asserts for the first time in his Petition that he received ineffective assistance from trial and appellate counsel.

A.      *Strickland and New York Standards on Habeas Review*

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Johnson must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied

if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial.'" *Id.* at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People*

*v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).  The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard.  *Id.* at 124, 126.  The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.  *Id.* at 125.

B.      *Claim 7.  Trial counsel*

Johnson alleges that "[t]he perfunctory performance of defense counsel deprived [him] of effective assistance of counsel.  Defense counsel failed to properly investigate the case, identify documents, and was not prepared for trial.  During trial defense counsel only made perfunctory objections and did not raise the issues requested by [Johnson]."

Johnson does not explain what information counsel failed to investigate, the documents he failed to identify, and what objections he should have raised.  Rather, his contentions are bald, conclusory, and completely devoid of factual allegations that would demonstrate how Johnson was prejudiced by counsel's performance even under New York's more favorable standard, thus dooming his claim that trial counsel was ineffective.

C.      *Claim 8.  Appellate counsel*

Johnson similarly contends that "[t]he perfunctory performance of appeal counsel deprived [him] of effective assistance of counsel.  Appeal counsel failed to raise the issues that [Johnson] requested to be raised upon Appellate review or allow [Johnson] to submit a pro se suppl[e]mental brief."  In support, he cites only to a letter from his appellate counsel attaching the Appellate Division's denial of his appeal.

This conclusory statement is also devoid of any factual allegations that might remotely support a claim of ineffective assistance of counsel. Johnson fails to even allege the arguments he contends appellate counsel should have made on his behalf. To the extent that such arguments are included in his Petition before this Court, the Court has considered and dismissed those claims in this memorandum opinion. The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).

Johnson does not present any other viable issue upon which an appeal might be successful, and this Court's review of the record before it does not indicate that any such issue exists. To the contrary, the record indicates that appellate counsel submitted a thoughtful brief raising three main arguments with extensive citations to trial transcripts and relevant case law. Consequently, Johnson's ineffective assistance of counsel claims are not only unexhausted but meritless as well.

5.      *Other Claims* (claims 10, 20, 21, 11, 22)

Finally, Johnson brings a number of miscellaneous claims.

A.      *Claims 10, 20, and 21. Vague and conclusory allegations*

In claim 10, Johnson alleges only that his conviction was "obtained by [Johnson] being wronged by the very institution that has been established to protect the very rights it has transgressed." He lists as his supporting fact: "The Washington County Superior Court has [m]isused power they possess by virtue of State Law and made possible only because the

Washington County Superior Court is clothed with the authority of State Law." He cites as support all 89 pages of exhibits attached to his Petition.

Similarly, in claims 20 and 21, he alleges that the conviction was "obtained by this entire matter from arrest to conviction being in violation of [Johnson's] guaranteed New York State Constitutional Rights, specifically Article (1) sections (6) Due Process, and (11) Equal Protection of the Law" and "in violation of [Johnson's] guaranteed United States Constitutional Rights, specifically Amendments (4) Rights of the People to be Secure in their Homes, (5) Right to the Effective Assistance of Counsel, against self-incrimination, and Due Process of Law, (6) Compulsory Process, and (14) Equal Protection of the Law." In support of those claims, he again cites to all his exhibits.

Johnson "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006). Claims stated in conclusory terms and unsupported by factual averments are insufficient to establish that a petitioner's constitutional rights were violated. Johnson has presented these claims in essentially conclusory terms without detailed reference to evidentiary support. Without specific facts and evidence upon which this Court might find that some constitutional right was infringed, granting a writ of habeas corpus on these claims would be inappropriate. *Id.* (citing *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support")). Accordingly, Johnson is not entitled to habeas relief on the claims he presents in conclusory terms, and claims 10, 20, and 21 must be denied.

B.     *Claim 11.  Denied right to attend and present evidence to the grand jury*

Johnson also complains that he was "not informed or allowed to attend or dispute allegations" before the grand jury in violation of New York law.  However, the Fifth Amendment right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment.  *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972) (citing *Hurtado v. California*, 110 U.S. 516, 534-35 (1884)).  Johnson's right to be tried on a felony only upon indictment by a grand jury derives solely from the New York State Constitution.  N.Y. Const. art. I, § 6; *see also LanFranco v. Murray*, 313 F.3d 112, 118-19 (2d Cir. 2002).  Consequently, an infirmity in state grand jury procedures, without some other constitutional infirmity, is a product of state law which is beyond the purview of this Court in a federal habeas proceeding.  *See Beck v. Washington*, 369 U.S. 541, 545-46 (1962); *Lopez v. Riley*, 865 F.2d 30, 32-33 (2d Cir. 1989) (state grand jury error not open to post-conviction challenge).  Because Johnson fails to establish an independent constitutional violation and thus fails to present a federal constitutional issue cognizable on federal habeas review, he cannot prevail on his grand jury claim.

C.     *Claim 22.  Inadequate law library*

Finally, Johnson asserts that his jail library was "inadequate to prepare for a trial pro se or to perform any real and effective legal research."  While it is true that the Constitution requires that a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the mere limitation of access to legal materials, without more, does not state a constitutional claim, *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995).  In order to state a constitutional claim, a petitioner must make a showing that

he has suffered, or will imminently suffer actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *accord Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987). To establish actual injury, a petitioner must demonstrate that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis*, 518 U.S. at 352-53. Construing Johnson's allegations as true, he nonetheless cannot prevail on his claim because he offers no facts to explain how the lack of legal materials prejudiced his ability to seek redress from the judicial system. *See Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004). Johnson does not claim that he was not "furnish[ed] . . . with the capability of bringing his challenges before the courts," *see id.* at 98; he only alleges that the library was inadequate. Johnson therefore is not entitled to relief on his inadequate law library claim.

## V. CONCLUSION

Johnson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); Second Circuit R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: October 10, 2013.

_____ /s/ James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
United States District Judge
